**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee/
Cross-Appellant,

v.

AURELIO TOPETE-PLASCENCIA,
also known as Pelon, also known as
Efren,

      Defendant-Appellant/
Cross-Appellee.

No. 02-8060/02-8078

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 01-CR-131-03-J)**

---

David A. Kubicheck, Assistant United States Attorney (Matthew H. Mead, United States Attorney and Patrick J. Crank, Assistant United States Attorney, on the brief), Casper, Wyoming, for Plaintiff-Appellee.

G. Mark Garrison, Cody, Wyoming, for Defendant-Appellant.

---

Before **HENRY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

A grand jury indicted Aurelio Topete-Plascencia ("Topete") and his co-defendants for various violations of Titles 8, 18, and 21 of the United States Code. Topete's case, like his co-defendants' cases, arises from a conspiracy to distribute controlled substances in Wyoming.[1] The Indictment charged Topete with (1) conspiracy to possess with intent to distribute, and to distribute, methamphetamine and cocaine, and (2) distribution of methamphetamine, and aiding and abetting the distribution of methamphetamine. Topete pled guilty to each count after plea negotiations with the Government failed. See United States v. Chavarin, Nos. 02-8052/02-8076, slip op. at 2 n.2, ___F.3d___, __ (10th Cir. 2003).

At the conclusion of a three day sentencing hearing, the district court found Topete's base offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") was thirty six. The district court adjusted Topete's base offense level: (1) upward by two levels based on its finding that he possessed a dangerous weapon during the commission of the drug offense; and (2) downward by three levels for timely acceptance of responsibility. The district court denied the Government's request to adjust Topete's base offense level

_____

[1] Decided and filed together with the companion cases of United States v. Chavarin, Nos. 02-8052/02-8076, ___F.3d___ (10th Cir. 2003); United States v. Jimenez-Oliva, Nos. 02-8053/02-8077, ___WL___ (10th Cir. 2003) (unpublished disposition); United States v. Montoan-Herrera, Nos. 02-8061/02-8079, ___F.3d___ (10th Cir. 2003).

2

upward for his aggravating role in the offense. See U.S.S.G. § 3B1.1. With a final base offense level of thirty five, and a criminal history category of I, the district court sentenced Topete to a term of 195 months imprisonment. See U.S.S.G. Chap. 5, Pt. A. Both Topete and the Government appeal the district court's final sentence. See 18 U.S.C. § 3742(a),(b). On appeal, Topete challenges the district court's assessment of the two-level dangerous weapon enhancement and the amount of methamphetamine the district court attributed to him in calculating his base offense level. We have jurisdiction under 18 U.S.C. § 3742. We affirm in part and remand for re-sentencing consistent with this opinion.

I.

The facts of this case are set out in full in the companion case of United States v. Chavarin, Nos. 02-8052/02-8076, slip op. at 3-7, ___F.3d___, __ (10th Cir. 2003); see Fed. R. App. P. 3(b)(2). In short, the evidence adduced at the sentencing hearing demonstrated that Topete and his co-defendants were involved in a conspiracy to distribute methamphetamine and cocaine in Casper, Wyoming. The evidence indicated that the co-conspirators received substantial quantities of methamphetamine on a regular basis. The co-conspirators stored, broke down, and distributed methamphetamine and cocaine in Casper. The majority of the co-conspirators were arrested, however, after selling or offering to sell several

pounds of methamphetamine to the United States Drug Enforcement Administration ("DEA").

With regard to the dangerous weapon enhancement, the evidence introduced at the sentencing hearing indicated that in September 2001, Topete picked up Lorenzo G. Delgado ("Delgado") from his house and drove him to the Ranch House Motel in Casper, Wyoming to retrieve a gun. In the parking lot of the motel, Topete offered Delgado $300 to go into the motel, rent room number three, remove the ventilation panel on the wall behind the refrigerator, and retrieve a gun that Topete had placed in that ventilation shaft. Delgado, however, refused to retrieve the gun because he thought Topete may have killed someone with it and he did not want his fingerprints on the gun.

Delgado informed the DEA of Topete's offer to retrieve the gun after being arrested. Acting upon the information provided by Delgado, law enforcement went to room number three in the Ranch House Motel, removed the ventilation panel behind the refrigerator, and found a Harrington and Richardson .22 caliber revolver. Law enforcement tested the gun for fingerprints, but did not find any on the gun. Similarly, law enforcement did not find any records indicating that Topete had ever rented room three at the Ranch House Motel. Instead, law enforcement learned Martin Jimenez-Oliva ("Martin") rented the room on several occasions.

4

Based on the foregoing, the United States Probation Office ("Probation") noted in its presentence investigation report ("PSR") that Topete was eligible for a two level dangerous weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). Topete objected to this enhancement as being factually inaccurate and based on Delgado's false testimony. Instead, Topete informed Probation that Delgado owned the gun. Topete told Probation he placed the gun in the room's ventilation shaft after the DEA arrested Delgado so Delgado could retrieve the gun after being released from jail. Topete then claimed he moved out of the motel room and had nothing further to do with the gun. The Government proved at the sentencing hearing, however, that Topete's story is factually impossible because Topete was arrested on October 4, 2001, and Delgado was not arrested until November 30, 2001.

## II.

## A.

First, Topete argues the district court improperly enhanced his sentence for possession of a dangerous weapon because the Government did not prove that he had possession of the gun; or alternatively, that if he had possession of the gun, the Government failed to prove any proximity between the gun and drug offense. See U.S.S.G. § 2D1.1(b)(1). The district court found Topete "had" and "controlled" the gun and pointed out that even under Topete's factually

5

impossible story, he still controlled the gun and hid it in the motel room for a co-conspirator. Thus, the district court found that Topete was entitled to the upward adjustment under either version of events. (R. Vol. 12 at 605-06). "We review factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error[.]" United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999).

If a defendant is convicted for an offense involving drugs, the Guidelines provide a two level enhancement "[i]f a dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. § 2D1.1 comment. (n.3). "The government bears the initial burden of proving possession by a preponderance of the evidence[.]" United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997). In a conspiracy case, the Government is not required to prove that the defendant personally possessed the firearm. Id. Rather, the "sentencing court may 'attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable to him.'" Id. (quoting United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991)). If the Government carries its burden, the enhancement is "'appropriate unless the defendant proves the exception – that it is clearly improbable the weapon was

6

connected with the offense.'" Vaziri, 164 F.3d 568 (quoting Smith, 131 F.3d at 1400).

On appeal, Topete ignores the story he told Probation and elects to proceed on the evidence introduced at the sentencing hearing. Topete argues the Government never proved he had possession of the gun and failed to demonstrate any proximity between the weapon and the offense. The Government, however, was not required to prove Topete had actual possession of the gun. The evidence at the sentencing hearing demonstrated Topete offered Delgado $300 to retrieve his gun from the Ranch House Motel. Law enforcement retrieved the gun from a room that had been rented by Martin. The introduction of this evidence satisfied the Government's initial burden under § 2D1.1(b)(1) because it demonstrates Topete had actual knowledge of the gun. Whether Martin, Topete, or Delgado placed the gun in the room's ventilation shaft is immaterial because the district court found that all the co-conspirators were in Casper solely to import and deliver drugs. Hence, possession of the gun, whomever it belonged to, was reasonably foreseeable to Topete. Further, possession of the gun for use in connection with the on-going drug trafficking activities was reasonably foreseeable to Topete in light of the fact all co-conspirators were in Casper solely to distribute drugs.

At the sentencing hearing, Topete failed to introduce any evidence to demonstrate that his or his co-conspirators possession of the gun was not connected with their drug offenses. Rather, Topete simply attacked Delgado's credibility. Topete makes the same arguments on appeal. The determination of a witness's credibility is a matter left to the sound discretion of the district court. United States v. Patron-Montano, 223 F.3d 1184, 1189 (10th Cir. 2000). Here, the district court found Delgado's testimony credible because it was corroborated by the DEA agents and independent evidence introduced at the sentencing hearing. After conducting a comprehensive review of the record, we uphold the district court's credibility determinations. Therefore, the district court's assessment of the two level dangerous weapon enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was not clearly erroneous.

B.

Second, Topete argues the district court erred in calculating his base offense level because it "double counted" the amount of drugs seized by law enforcement. In calculating Topete's base offense level, the district court held Topete responsible for the conduct of his co-defendants and found that his relevant conduct was between five and fifteen kilograms of methamphetamine. See U.S.S.G. § 2D1.1(c)(2). We review a defendant's challenge to a district

8

court's drug quantity findings for clear error. United States v. Humphrey, 208 F.3d 1190, 1208 (10th Cir. 2000).

Under the Guidelines, a defendant's base offense level for an offense involving drugs is calculated, in part, on the quantity of drugs he is accountable for as relevant conduct. U.S.S.G. §§ 2D1.1(c), 1B1.3(a). In a case of "jointly undertaken criminal activity" a defendant's relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Id. § 1B1.3(a)(1)(B). "The Government must prove drug quantities at sentencing by a preponderance of the evidence." Humphrey, 208 F.3d at 1208.

Thus, the district court may consider the amount of drugs the defendant knew or should have known were involved in the conspiracy in calculating a defendant's relevant conduct for purposes of a conspiracy conviction. United States v. Bernaugh, 969 F.2d 858, 865 (10th Cir. 1992). In so calculating, the district court may rely on factually supported estimates when the actual drugs underlying the offense are not seized. United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996). Additionally, "[i]n an offense involving an agreement to sell a controlled substance, the agreed upon quantity of the controlled substance *shall* be used to determine the offense level . . . ." U.S.S.G. § 2D1.1 comment. (n.12) (emphasis added); United States v. Hardwell, 80 F.3d

9

1471, 1496-97 (10th Cir. 1996) (explaining that under § 2D1.1 the district court may attribute the quantity of a negotiated sale to Government agents when the defendant had the intent and ability to obtain that quantity of drugs).

The evidence in the record supports the district court's finding that over five kilograms of methamphetamine were attributable to Topete without any chance of impermissible double counting. Delgado testified he observed Topete obtain a pound of methamphetamine from the North Park Apartment and another pound from the Chestnut House. (R. Vol. 9 at 23-26, 53). In September 2001, Delgado and Laurencio Jimenez-Oliva ("Laurencio") retrieved approximately six pounds of methamphetamine from a station wagon with Arizona plates. (R. Vol. 9 at 61-64). On October 4, 2003, Topete agreed to deliver four pounds of methamphetamine to Agent Duncan of the DEA. (R. Vol. 10 at 283). Agent Duncan testified that if he had not arrested Topete, he believed Topete would likely deliver the four pounds since they had worked out the logistics of the delivery. (R. Vol. 10 at 284); see Hardwell, 80 F.3d at 1496.

The district court's decision to hold Topete accountable for the amount of methamphetamine distributed by his co-defendants was not clearly erroneous in light of the court's finding that all the co-defendants were in Casper for the sole purpose of distributing methamphetamine. See United States v. Torres, 53 F.3d 1129, 1144 (10th Cir. 1995) ("The touchstone under § 1B1.3 is whether the

10

quantities were reasonably foreseeable to the coconspirators in light of the nature, extent, and purpose of the conspiracy."). Thus, the evidence introduced at the sentencing hearing demonstrates Topete was responsible for at least twelve pounds, or 5.44 kilograms, of methamphetamine with no double counting involved. Accordingly, the district court's finding that Topete was entitled to a base offense level of thirty six because his relevant conduct involved between five and fifteen kilograms of methamphetamine was not clearly erroneous.

## III.

The Government cross-appeals the district court's decision to adjust Topete's sentence downward three levels for timely acceptance of responsibility. In sentencing Topete, the district court stated: "The factual basis that was given in this matter was vague and incomplete. Nevertheless, the Court, *in the spirit of leniency*, . . . will grant an adjustment for responsibility of the full three levels." (R. Vol. 12 at 650-51) (emphasis added). The Government argues the district court's decision was arbitrary and based solely on the fact that Topete pled guilty. See U.S.S.G. § 3E1.1. We apply the November 2001 Guidelines that were in effect on the date that Topete was sentenced. See United States v. Chavarin, Nos. 02-8052/02-8076, slip op. at 21 & n.7, ___F.3d___, __ (10th Cir. 2003). We review a district court's interpretation of the Guidelines *de novo*. United States v. Plotts, 347 F.3d 873, 875 (10th Cir. 2003).

11

## A.

"A defendant who enters a plea of guilty is not entitled to an adjustment under [§ 3E1.1] as a matter of right." U.S.S.G. § 3E1.1 comment. (n.3).[2]  Rather, the "[e]ntry of a guilty plea prior to the commencement of trial combined with *truthfully* admitting the conduct comprising the offense of conviction, [and any relevant conduct thereto] will constitute significant evidence of acceptance of responsibility for purposes of [§ 3E1.1(a)]." Id. § 3E1.1(a) comment. (n.3) (emphasis added).  The evidence of a guilty plea "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." Id.

When a defendant does not truthfully admit his involvement in the charged crimes, he is not entitled to an acceptance of responsibility adjustment. United States v. Bindley, 157 F.3d 1235, 1241 (10th Cir. 1998).  Similarly, we have recognized that a defendant is not entitled to an acceptance of responsibility adjustment when he has admitted wrongdoing, but his admissions are untimely and incomplete. United States v. McMahon, 91 F.3d 1394, 1397 (10th Cir. 1996). Thus, when a defendant does not truthfully and completely admit his involvement

---

[2] We set forth the standards that control our disposition of this issue in the companion case of United States v. Chavarin, Nos. 02-8052/02-8076, slip op. at 22, ___F.3d___, __ (10th Cir. 2003), and need not repeat those standards here.

12

in the offense, he has failed to carry his burden of demonstrating "'recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" Bindley, 157 F.3d at 1241 (quoting United States v. McAlpine, 32 F.3d 484, 489 (10th Cir. 1994)).

B.

We have thoroughly reviewed the records in Topete and his co-defendants' cases. We agree with the district court that Topete, unlike his co-defendants, gave a vague and incomplete basis for his guilty plea. At Topete's change of plea hearing, he denied any knowledge of what was happening when he delivered drugs with Martin and Laurencio. Topete stated he only "[felt he was] guilty because of what [his] attorney communicated to [him]." Only after Topete's attorney asked a series of leading questions was the district court able to establish a factual basis for the guilty plea.

The Government proved that Topete lied to Probation regarding the gun enhancement. Additionally, when Topete objected to the PSR he "admitted he was present" but denied "actively participating" in the drug transactions on April 5, 2001, August 21, 2001, and August 28, 2001. (R. Vol. 17 at 28). The record, however, conclusively demonstrates otherwise. The Government presented evidence that showed Topete conducted a "hand-to-hand" delivery of methamphetamine to a confidential source on April 5, 2001. (R. Vol. 10 at 134).

13

Topete also actively participated in the August 19 and 28, 2001 transactions with Agent Duncan. (R. Vol. 10 at 247-55). Moreover, Topete pled guilty to aiding and abetting his co-conspirators which lies in direct contradiction with his denial of any active participation. See United States v. Barajas-Diaz, 313 F.3d 1242, 1249 (10th Cir. 2002) ("The essence of aiding and abetting liability is proof the defendant willfully associated with a criminal venture and sought through some *affirmative action* to make that venture succeed.") (internal quotations and citations omitted) (emphasis added).

Absent Topete's guilty plea, we are unable to locate any evidence in the record demonstrating that he affirmatively accepted personal responsibility for his criminal conduct. The Guidelines provide that a defendant who falsely denies relevant conduct has acted in a manner inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1 comment. (n.1(a)). A guilty plea is only significant evidence of responsibility if it is *combined with* a truthful admission of relevant conduct. U.S.S.G. § 3E1.1 comment. (n.3). Here, Topete gave a vague and incomplete factual basis for his plea, falsely denied relevant conduct, and lied to Probation. Nonetheless, the district court apparently interpreted § 3E1.1 to permit it to grant Topete a three level downward adjustment for acceptance of responsibility in the "spirit of leniency." The goal of the Guidelines is "to reduce unjustified disparities and so reach towards the evenhandedness and neutrality

14

that are distinguishing marks of any principled system of justice." Koon v. United States, 518 U.S. 81, 113 (1996). To this end, the Guidelines limit a district court's ability to fashion a sentence based on mere sympathy or commiseration, especially when the Guidelines prescribe a particular range. See, e.g., United States v. Roach, 296 F.3d 565, 573 (7th Cir. 2002). Under the Guidelines, an acceptance of responsibility adjustment cannot be used as a departure mechanism based solely on a court's leniency.

In this case, the Guidelines prescribed a particular sentencing range based on the amount of methamphetamine distributed by Topete and his co-conspirators. The district court incorrectly interpreted the acceptance of responsibility adjustment by concluding that it could adjust Topete's base offense level downward three levels in the "spirit of leniency." The district court did not make any findings – other than Topete gave a vague and incomplete basis for his plea of guilty – when it adjusted Topete's base offense level downward pursuant to § 3E1.1. Accordingly, we must remand this case to the district court to determine whether Topete is entitled to the acceptance of responsibility adjustment.

For the foregoing reasons, we REMAND this case to the district court with instructions for the court to VACATE Topete's final sentence and re-sentence him in a manner consistent with this opinion.

SO ORDERED.

15