**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

>    Plaintiff - Appellee,

v.

MIGUEL BUSTAMANTE-
CONCHAS,

>    Defendant - Appellant.

No. 15-2025

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 1:13-CR-02028-JAP-2)**

---

Todd A. Coberly, Coberly & Martinez, LLLP, Santa Fe, New Mexico, for
Appellant.

Sean J. Sullivan, Assistant United States Attorney (Damon P. Martinez, United
States Attorney, with him on the brief), Office of the United States Attorney,
Albuquerque, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Miguel Bustamante-Conchas was convicted on drug distribution charges

and sentenced to 240 months in prison. At sentencing the district court found that

Bustamante-Conchas was responsible for a significant amount of drugs and for a firearm in the possession of a co-conspirator, and then after a lengthy hearing sentenced him before he could speak on his behalf to the court. He challenges on appeal the district court's factual findings at sentencing, as well as the court's failure to allow him to allocute before sentencing.

We conclude the factual findings are supported by the record and justify the below-guideline sentence imposed by the court. Although the court should have allowed Bustamante-Conchas to allocute, any error was not plain. We therefore AFFIRM the sentence.

# I. Background

## A. Factual Background

After immigrating to the United States in 2007, Bustamante-Conchas formed a heroin trafficking conspiracy with a friend, Baltazar Granados. Before their 2013 arrest by the DEA, the pair often assisted customers in the distribution of kilograms of heroin in the Albuquerque, New Mexico, area. They also cooked heroin at Granados's home, which he shared with his wife, Olga Fabiola Rosales-Acosta. At Bustamante-Conchas's direction, Granados delivered heroin in small quantities to various customers, and collected the resulting cash payments. For some of the time during the conspiracy, Bustamante-Conchas and Granados had another partner known as "Edgar." Eventually, Edgar left the conspiracy, but he continued to visit the Granados's home.

Bustamante-Conchas obtained heroin from multiple sources before his arrest. To facilitate the enterprise, Bustamante-Conchas allowed two sources, Joel Nunez-Haros and Pablo Felix-Sicairos, to use various homes he controlled in Albuquerque. The first of these homes was one Bustamante-Conchas had rented himself. Rather than live in the home, however, Bustamante-Conchas allowed Nunez-Haros and Felix-Sicairos to store heroin and cash in the home for safekeeping. When Bustamante-Conchas, Granados, and the pair of suppliers were arrested in 2013, the police found over one-hundred grams of heroin and nearly $90,000 in cash at the residence.

The second home, which Bustamante-Conchas owned, was located nearby. Agents also searched this home and found another one-hundred grams of heroin and other items commonly used in the drug trade.

A third home was rented by Granados's wife because Bustamante-Conchas wanted a home with a garage. After searching this residence, agents found nearly nine kilograms of heroin.

Agents also searched Granados's home, where they found 1.17 kilograms of heroin and a Glock pistol.

### B. *Procedural Background*

After Bustamante-Conchas's co-defendants signed plea agreements, the government obtained a superceding indictment. That indictment charged Bustamante-Conchas with federal drug and firearm charges that, if proven, would require a ten-year mandatory minimum sentence. After a week-long trial, the district court dismissed the firearm charge and presented the remaining charges to the jury. The jury found Bustamante-Conchas guilty of conspiracy to distribute and intent to distribute one kilogram or more of heroin.

Prior to sentencing, Bustamante-Conchas's counsel presented extensive personal-history evidence regarding his unstable childhood, when he was often hungry and in need of adequate clothing. The district court heard evidence that Bustamante-Conchas's uncles had abused him, and that he had subsequently developed an alcohol abuse problem. In addition, Bustamante-Conchas's first child had died shortly after birth.

At the sentencing hearing, Bustamante-Conchas challenged several of the factual findings in the presentence report, including the drug quantity determination, which included all drugs and cash found at the three properties discussed above. His attorney cross-examined government witnesses and argued for the minimum, ten-year sentence, but the district court neglected to permit Bustamante-Conchas to make a statement to the court as required by the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 32(i)(4)(A)(ii). Under the

Guidelines, Bustamante-Conchas's sentencing range was 292 to 365 months of incarceration. In making this determination, the district court agreed with the PSR and attributed all heroin and cash to Bustamante-Conchas.[1] The court also agreed with the PSR's two-level enhancement based on Granados's firearm possession. The court then sentenced Bustamante-Conchas to a below-guidelines range of 240 months. To justify the downward variance, the district court specifically noted Bustamante-Conchas's harsh upbringing and the unfortunate circumstances of his childhood. The district court also imposed a $100,000 fine.

## II. Analysis

Bustamante-Conchas contends the district court erred in (1) attributing excess drug quantities to him for purposes of his sentencing guidelines calculation; (2) enhancing his sentence due to his co-conspirator's possession of a firearm; and (3) failing to allow him to allocute before sentencing.

### A. Quantity of Drugs

Bustamante-Conchas claims the district court improperly attributed over twelve kilograms of heroin to him at sentencing. We review sentences imposed by the district court for abuse of discretion. *See United States v. Zamora-Solorzano*, 528 F.3d 1247, 1249–50 (10th Cir. 2008). In addition, we review the

---

[1] The district court converted the cash to its heroin equivalent, resulting in a final total of over twelve kilograms.

district court's finding of facts during sentencing for clear error. *See United States v. Kitchell*, 653 F.3d 1206, 1226 (10th Cir. 2011).

The sentencing court may take into account "relevant conduct" of the defendant, which may go "beyond simply the conduct for which the defendant was convicted." *United States v. Green*, 175 F.3d 822, 836–37 (10th Cir. 1999); *see also* USSG § 1B1.3. In the case of "jointly undertaken criminal activity," the Guidelines allow the district court to take into account "all reasonably foreseeable acts and omissions of others in furtherance of the [criminal activity]". USSG § 1B1.3(a)(1). To do this, the district court must undertake a two-step inquiry: first, it must determine "the scope of the criminal activity the particular defendant agreed to jointly undertake"; second, it must determine whether the "conduct of others was both in furtherance of . . . and reasonably foreseeable in connection with . . . the [criminal activity]." *Id.* cmt n.2. The district court must make particularized findings as to both of these elements. *See United States v. Figueroa-Labrada*, 720 F.3d 1258, 1267 (10th Cir. 2013). Bustamante-Conchas claims the district court failed to make a particularized finding about the scope of the criminal activity.

But to warrant appellate review, an argument must have been properly preserved below by the appellant. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011). If an argument was not presented to the district court out of neglect, we generally find it forfeited. *See id.* at 1128. We review

-6-

forfeited arguments for plain error, but only if the appellant asks for plain error review in this court and puts forward arguments concerning its application. *See id.* at 1130–31 ("[T]he failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court."). In the case of procedural challenges in the district court, the appellant must have specifically objected to the contested procedure at the appropriate time. *See United States v. Mendoza*, 543 F.3d 1186, 1191 (10th Cir. 2008) ("A party must specifically object to the district court's procedure in order to preserve that issue for review."); *see also United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007).

Bustamante-Conchas never objected to the district court's alleged failure to make a scope finding. When asked at oral argument where such an objection was made, Bustamante-Conchas's appellate counsel could not provide a specific cite to the record. In fact, appellate counsel conceded at argument that Bustamante-Conchas's trial counsel did not raise the scope issue *at sentencing*. The record confirms this: after the district court announced its findings regarding the quantity of drugs, Bustamante-Conchas did not object based on any lack of a scope finding. And in pre-hearing documents—which counsel relied on and referenced during the hearing before the district court—Bustamante-Conchas framed his

arguments in terms of foreseeability, not scope.[2]  Without a timely objection on the specific ground now argued, the issue of the district court's scope finding was forfeited.  And because Bustamante-Conchas does not argue for plain error review on appeal, we will not address the merits of his claim.

### B.  Dangerous Weapon Enhancement

The district court enhanced Bustamante-Conchas's sentence for possessing a dangerous weapon in connection with a drug offense.  *See* USSG § 2D1.1(b)(1).  The court found that Bustamante-Conchas's co-conspirator, Granados, had possessed a firearm in connection with the drug conspiracy.  Bustamante-Conchas argues the district court relied on a clearly erroneous fact in making this determination.

To apply the dangerous weapons enhancement, the government need not prove that "the defendant personally possessed the firearm."  *United States v. Topete-Plascencia*, 351 F.3d 454, 458 (10th Cir. 2003).  Rather, it must show only that a co-defendant or co-conspirator possessed such a weapon, and that such possession was "known to the defendant or reasonably foreseeable to him."  *Id.* (quoting *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997)).  The

---

[2]  One of the referenced documents, Document 333 on the district court's docket, was filed under seal.  We have reviewed this document, and—without revealing its contents—we are satisfied that it framed Bustamante-Conchas's argument in terms of foreseeability and did not raise a scope objection.

weapon must be present during the offense, and it must not be clearly improbable that the weapon was connected with the offense. USSG § 2D1.1(b)(1) cmt n.11.

When making this determination, the district court may consider evidence that would be inadmissible at trial, "provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.* § 6A1.3(a). Such evidence may include hearsay, so long as it "bear[s] some minimal indicia of reliability." *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995)) (internal quotation marks omitted). The evidence supporting the hearsay need only be "sufficient to vest some minimal confidence in the reliability" of the evidence. *Id.* at 1297. We review the district court's factual findings for clear error. *See United States v. Sallis*, 533 F.3d 1218, 1122–23 (10th Cir. 2008).

At his arrest, the officers seized a Glock pistol from Granados's home. Granados's wife, Rosales-Acosta, spoke to investigators about the origin of the gun. She told investigators that her husband had previously stated that Bustamante-Conchas had given him the gun as a form of protection. Specifically, Bustamante-Conchas apparently intended Granados to use the gun as protection against Edgar, the former trafficking partner. Although Rosales-Acosta testified at Bustamante-Conchas's trial, she did not testify as to these specific facts. But the investigator to whom she spoke did.

Given the evidence before it, the district court did not clearly err in finding Granados's possession of the weapon was both foreseeable to Bustamante-Conchas and connected to their joint criminal enterprise. Although the testimony regarding Granados's gun was hearsay, the record provided ample indicia of reliability. The district court had the opportunity to observe Rosales-Acosta testify—albeit not about the particular firearm at issue—and judge her credibility. We have no reason to doubt the court's credibility determination.

In addition, other evidence in the record supported her statement. First, Rosales-Acosta had testified that Edgar had continued to appear at her (and Granados's) home after Edgar left the conspiracy. Edgar's continued presence corroborates Rosales-Acosta's statements to the investigator that Bustamante-Conchas had supplied the gun as a form of protection against Edgar. Second, the record established that Granados worked underneath Bustamante-Conchas and often took orders from him. As the district court noted, Bustamante-Conchas's giving Granados a gun was "analogous to other directions" he had given him. R. at 1622. For example, in addition to making drug deliveries and collecting cash payments on Bustamante-Conchas's behalf, Granados had installed a statue of the patron saint of drug dealers, Jesus Malverde, after Bustamante-Conchas instructed him to do so.[3] Reviewing the record, the district court believed Rosales-Acosta's

---

[3] Jesus Malverde is a Mexican folklore hero from the late nineteenth century. He has been compared to Robin Hood, in that he stole from the rich and

(continued...)

claim because it paralleled other orders Bustamante-Conchas had given Granados.

Granados's willingness to obey Bustamante-Conchas's orders in the past made

Rosales-Acosta's statements more reliable.

Thus, the district court did not clearly err when it found Granados's

possession of the gun justified a sentence enhancement for Bustamante-Conchas.

Although some of the relevant testimony was hearsay, the record provided

sufficient indicia of reliability such that the district court could use it during

sentencing.

### C. *Opportunity to Allocute*

Finally, Bustamante-Conchas argues the district court's failure to allow him

to allocute before sentencing constitutes reversible error. Because he failed to

raise this objection at the time of sentencing, we review for plain error. *See*

*supra*. "Plain error occurs when there is (1) error, (2) that is plain, which

(3) affects substantial rights, and which (4) seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *United States v. Hinson*,

585 F.3d 1328, 1333 (10th Cir. 2009).

---

[3](...continued)
gave to the poor. Some drug dealers believe a statue of Malverde in one's home
has the power to make drugs invisible to police. *See* Matt Davis, *Our Blessed
Saint of Narcotics?*, The Portland Mercury (Mar. 15, 2007),
**http://www.portlandmercury.com/news/our-blessed-saint-of-
narcotics/Content?oid=276901;** *see also* Manuel Roig-Franzia, *In the Eerie
Twilight, Frenetic Homage To a Potent Symbol*, The Washington Post (July 22,
2007), **http://www.washingtonpost.com/wp-
dyn/content/article/2007/07/21/AR2007072101366.html.**

The Federal Rules of Criminal Procedure guarantee a defendant the right to speak to the court before being sentenced. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii) ("Before imposing sentence, the court must . . . permit the defendant to speak or present any information to mitigate the sentence . . . ."). And a denial of this right is generally "not subject to harmless-error analysis" on de novo review. *United States v. Frost*, 684 F.3d 963, 979 (10th Cir. 2012). Nonetheless, we have held that such a denial does not always result "in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Mendoza-Lopez*, 669 F.3d 1148, 1153 (10th Cir. 2012). Thus, an error by the district court with respect to allocution does not necessarily warrant reversal under plain error review. *See, e.g.*, *Frost*, 684 F.3d at 979 (finding allocution error still needed to meet all four prongs of the plain error test to warrant reversal); *see also United States v. Reyna*, 358 F.3d 344, 352 (5th Cir. 2004) ("We decline to adopt a blanket rule that once prejudice is found under the rule stated above, the error invariably requires correction. As recognized by the Supreme Court in *Hill* [*v. United States*, 368 U.S. 424, 428 (1962)], denial of the right to allocution 'is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure.'"). *But see United States v. Adams*, 252 F.3d 276, 287–88 (3d Cir. 2001) (presuming prejudice and satisfaction of the plain error test from a denial of allocution).

Bustamante-Conchas contends that because the right to allocute is so fundamental, its denial should automatically result in reversal—even under a plain error standard. As support, he cites our recent opinion in *United States v. Craig*, in which we stated in direct review of sentencing that "a complete denial of allocution" requires reversal. 794 F.3d 1234, 1237 (10th Cir. 2015). In support of that proposition, however, we cited cases that reviewed such errors de novo, not for plain error. *Id.* (citing *United States v. Castillo*, 501 F. App'x 848, 849 (10th Cir. 2012) ("We review de novo whether the district court complied with its Rule 32 obligations.")). So the plain error test still must be met, as *Frost* and *Mendoza-Lopez* require.

The government concedes that Bustamante-Conchas meets the first three prongs of the plain error test, but contends he cannot meet the fourth. We agree. Under the fourth prong of the test, we must examine "the seriousness of the error . . . in the context of the case as a whole." *Mendoza-Lopez*, 669 F.3d at 1153. In the allocution context, part of this inquiry is what the defendant "would have said to the district court" had he been given the opportunity to speak. *Frost*, 684 F.3d at 980 (quoting *United States v. Rausch*, 638 F.3d 1296, 1302 (10th Cir. 2011)).

Looking at the case as a whole, we do not believe the district court's error was particularly egregious or affected the public reputation of the proceeding. The district court heard arguments regarding Bustamante-Conchas's defenses, and

his request for a low-end sentence. The court invited the parties to comment on the sentence multiple times. And after hearing such arguments, the district court imposed a sentence well-below Bustamante-Conchas's advisory guidelines range, varying downward from a range of 292–365 months to an ultimate sentence of 240 months. Bustamante-Conchas does not direct us to any additional information he would have provided to the district court had he been given the opportunity to allocute. Although he acknowledges that he must meet the plain error standard, Bustamante-Conchas devotes only a few pages in his brief to this issue, and makes little attempt to show how his claim satisfies the fourth prong of the test.

Because we find the district court's failure to allow allocution did not rise to the level of plain error, we will not remand for resentencing.

## III. Conclusion

We AFFIRM the district court's sentence.

15-2025, <u>United States v. Bustamante-Conchas</u>
**LUCERO**, J., concurring in part and dissenting in part.

I concur in all but Section II.C of the majority opinion, in which my colleagues

hold the district court's failure to provide Bustamante-Conchas an opportunity to allocute

at his sentencing hearing did not seriously affect the fairness, integrity, or public

reputation of judicial proceedings. (Majority Op. 11-14.) In my view, the fourth prong

of the plain error test is satisfied when, absent extraordinary circumstance, a district court

wholly neglects its duty to permit allocution. This much is required by our circuit

precedent.

The right to allocute is not a mere formality. Prior to sentencing a defendant to a

term of imprisonment, we require that a sentencing judge "address the defendant

personally in order to permit the defendant to speak." Fed. R. Crim. P. 32(i)(4)(A)(ii).

This requirement "gives the defendant an opportunity to apologize and express remorse,

supplies a forum in which defendants may challenge societal injustice, and may provide

answers to victims' questions regarding the crime." <u>United States v. Landeros-Lopez</u>,

615 F.3d 1260, 1267 n.7 (10th Cir. 2010). "Providing a defendant with a meaningful

opportunity to speak on his own behalf advances the public perception of fairness." <u>Id.</u> at

1267. In allowing a defendant to face his judge as an individual, we provide an

opportunity for a one-to-one conversation at the critical sentencing stage.

We have previously held a district court plainly errs when a defendant is permitted

to speak only after his sentence is definitively announced. <u>Id.</u> at 1265-66 & n.4. In that

case, we concluded the fourth prong of the plain error test was satisfied because "a

sentencing court undermines its own legitimacy when it invites a defendant to speak only after making clear that his sentence is a foregone conclusion." Id. at 1267. Such a procedure violates the Supreme Court's mandate that a sentencing judge must "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." Id. at 1266-67 (quoting Green v. United States, 365 U.S. 301, 305 (1961) (plurality opinion)). "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." Green, 365 U.S. at 304.

If a district court's failure to permit allocution before sentencing seriously affects the fairness, integrity, or public reputation of judicial proceedings, a fortiori, a court's failure to permit any allocution at all constitutes reversible error. In both scenarios, the purpose of allocution remains unfulfilled because a defendant has not had the opportunity to "present to the court his plea in mitigation." Id. Landeros-Lopez is dispositive of the issue before us.

To be sure, our circuit precedent decrees that an allocution error is not necessarily error per se and therefore plain, but in each of the cases in which we have excused an allocution error, the defendant was provided a meaningful opportunity to address the court personally at some point in the sentencing proceedings. See United States v. Frost, 684 F.3d 963, 979-80 (10th Cir. 2012) (defendant invited to allocute after announcement of a "proposed sentence," giving defendant "an opportunity to influence the sentence imposed"); United States v. Mendoza-Lopez, 669 F.3d 1148, 1152-54 (10th Cir. 2012) (defendant invited to allocute on limited subject after court announced intention to

2

sentence within Guidelines, but "heard and carefully considered Mendoza-Lopez's arguments for a downward departure and variance"); United States v. Rausch, 638 F.3d 1296, 1301 (10th Cir. 2011) (defendant's supervised release revoked without allocution, but court warned of particular consequences of violation at prior hearings and "personally invited Mr. Rausch to speak in mitigation of sentence" at prior hearing). But that is not the situation in this case. Bustamante-Conchas was never offered the chance to speak at his own sentencing hearing.

The majority notes that Bustamante-Conchas received a below-Guidelines sentence. (Majority Op. 14.) But this factor cannot be dispositive; the defendant in Landeros-Lopez also received a downwardly variant sentence. 615 F.3d at 1262. The majority also faults Bustamante-Conchas for failing to proffer a proposed allocution to this court. (Majority Op. 14.) Yet no such proffer was hinted at in Landeros-Lopez. And the majority notes that counsel spoke on behalf of Bustamante-Conchas during the sentencing hearing. But as the Supreme Court has recognized, even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green, 365 U.S. at 304. Permitting counsel to speak is not a sufficient substitute for allocution.

I agree with the Seventh Circuit that "in the vast majority of cases, the denial of the right to allocution is the kind of error that undermines the fairness of the judicial process." United States v. Luepke, 495 F.3d 443, 451 (7th Cir. 2007). Our court has recognized one exception: "Where the court personally invites the defendant to present information to mitigate his sentence, and the defendant in fact does so, fairness is not

3

seriously affected, notwithstanding the presumption of prejudice." Frost, 684 F.3d at 980. But the failure to afford a defendant any opportunity to address the court, even a defendant who is ultimately sentenced below the Guidelines range, seriously affects the fairness, integrity, or public reputation of the judicial proceedings. I would reverse and remand to the district court to allow Bustamante-Conchas an opportunity to allocute before resentencing.