FILED
United States Court of Appeals
Tenth Circuit

March 30, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 10-1388

RALPH RAUSCH,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. C. No. 1:07-CR-00497-JLK-1)**

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

John M. Hutchins, Assistant United States Attorney (John F. Walsh, United States Attorney, and Judith Smith, Assistant United States Attorney, with him on the brief) Denver, Colorado.

Before **O'BRIEN**, Circuit Judge, **TACHA,** and **SEYMOUR**, Senior Circuit Judges.

**TACHA**, Senior Circuit Judge.

Defendant-appellant Ralph Rausch appeals from his sentence imposed

following the revocation of his supervised release, contending that the district

court denied him his right to allocution at sentencing by never asking him personally whether he would like to speak before imposition of sentence. Because Mr. Rausch cannot demonstrate plain error warranting reversal, we AFFIRM.

## I. BACKGROUND

On January 31, 2008, Mr. Rausch pleaded guilty to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See United States v. Rausch*, 570 F. Supp. 2d 1295, 1296 (D. Kan. 2008). He appeared for sentencing on August 12. The applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") was 97–121 months' imprisonment, with a statutory maximum sentence of ten years. *Id.* at 1296–97. Due in large part to Mr. Rausch's frail health and his need for a kidney transplant, however, the district court granted a significant downward variance and sentenced him only to time served (which had been a single day) and a lifetime of supervised release. *Id.* at 1308. Among other things, the terms of supervised release placed Mr. Rausch on home detention enforced through electronic monitoring; forbade him from using a computer and viewing any pornography; and required compliance with sex-offender treatment.

On March 23, 2010, the probation office filed a Petition for Issuance of Summons Due to Violations of Supervised Release, contending that Mr. Rausch violated the terms of his supervised release by viewing pornography on pay-per-

view television, leaving his residence without permission, and violating rules specified in his sex-offender treatment. At a preliminary scheduling hearing, counsel for Mr. Rausch indicated that he would not contest the violations. As the court dismissed counsel and Mr. Rausch pending the full hearing, the court warned him that further violations would lead to prison time:

> THE COURT: I want to make this very, very clear. No misunderstanding about this at all. If that treatment contract is violated—is canceled by the treatment people because of his failure to cooperate during the time from today until we have the hearing, an arrest warrant will be issued and there will be a violation and that will be the end of it. Do you understand what I am saying, Mr. Rausch?
>
> MR. RAUSCH: Yes, sir.
>
> THE COURT: No assumptions on your part. If you don't comply fully with that treatment program and they for any reason they have [to] terminate that contract, you are going to prison.
>
> MR. RAUSCH: Yes, sir.

The revocation hearing took place on May 13. The violations triggered an advisory Guidelines sentence of 3–9 months' imprisonment, with a statutory maximum of two years. The parties, however, agreed that Mr. Rausch should instead be sentenced to another term of supervised release, such term to include a new condition that he live in a halfway house rather than in his own residence. Before imposing sentence, the court personally invited Mr. Rausch to speak:

> THE COURT: Mr. Rausch, I want to hear from you.
>
> . . . .

THE COURT: Mr. Rausch, whatever you have to say, I want to listen to.

MR. RAUSCH: Yes, Your Honor. I just want to say I'm sorry for wasting your time, and sorry for wasting the time of my therapist and my probation officer for something that I can control. And I'm truly sorry that I wasted your time. And I don't want to ever see this courtroom again under these circumstances.

The court then agreed with the parties' recommendation of additional terms of supervised release instead of prison time, but it warned Mr. Rausch that it would impose the statutory maximum of two years' imprisonment if he again violated the terms of his supervised release:

THE COURT: Now, I said this the last time you were in court, and I want to drive the point home. I want to make sure you understand this. I'm going to go along with the recommendation for the halfway house. If I get one single report that you've slammed the door, that you've been rude, that you refused to participate in treatment, that you sit during a session and pout instead of opening up and discussing these issues with other people, I'm going to revoke this, and you're going to go to prison.

MR. RAUSCH: Yes, sir.

THE COURT: This is it. Now, let me tell you what is in store for you if that happens. And if you want to consider it a threat, you can; but this is just the way life is. If you go to prison, it's going to be for two years. When you get out, you're going to be on supervised release. If you violate the terms again, you're going back for another two years. If you violate, you're going back for another two years. You can spend whatever time God has allowed you with the majority of it being spent in prison, or you can do what everybody's asking you to do.

MR. RAUSCH: Yes, sir.

Then, in imposing the sentence, the court made clear that had it not

sentenced Mr. Rausch to additional supervised release, it would have sentenced him to the statutory maximum of two years' imprisonment.

Two months later, the probation office filed another Petition for Issuance of Summons Due to Violation of Supervised Release after it learned that Mr. Rausch had been terminated from sex-offender treatment due to noncompliance with the program's requirements. As this was the same violation grade as the prior violations, the Guidelines again recommended 3–9 months' imprisonment; the statutory maximum was two years. At the revocation hearing, the government called Mr. Rausch's sex-offender counselor as its sole witness. She testified that Mr. Rausch had been terminated from the program due to his unwillingness to participate in treatment. The court then asked counsel for Mr. Rausch whether she wanted to present any testimony. She declined but gave argument in support of a sentence of supervised release in lieu of prison time. The court then found that Mr. Rausch had violated the terms of his supervised release, revoked it, and sentenced him to two years' imprisonment followed by supervised release for life.

Mr. Rausch appeals from that sentence, arguing the district court violated his right to allocution by failing to address him personally to invite him to speak on his own behalf prior to imposing the two-year sentence. He seeks a remand for resentencing with a different judge. In the alternative, he argues the sentence is substantively unreasonable and that the district court's imposition of a lifetime of supervised release is erroneous because it did not credit him for the two years

he was sentenced to prison.

## II. DISCUSSION

A.      Right of Allocution

Mr. Rausch did not object to the purported violation of his allocution rights

at the revocation hearing. We therefore review for plain error.[1] "Plain error

occurs when there is (1) error, (2) that is plain, which (3) affects [the defendant's]

[1]We have never expressly adopted a standard of review for alleged violations of the right of allocution when the defendant failed to object below. *See United States v. Landeros-Lopez*, 615 F.3d 1260, 1264 n.4 (10th Cir. 2010). We have, however, stated that such errors are "per se prejudicial," *see United States v. Jarvi*, 537 F.3d 1256, 1262 (10th Cir. 2008), which is a concept potentially implicated under plain-error review. In addition, in recent years, the Supreme Court has repeatedly instructed the courts of appeals not to disregard Fed. R. Civ. P. 52(b). *See, e.g.*, *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009); *United States v. Vonn*, 535 U.S. 55, 65 (2002); *Johnson v. United States*, 520 U.S. 461, 466 (1997). Given those Supreme Court precedents, most circuits to have addressed the question apply plain-error review in these circumstances. *See, e.g.*, *United States v. Robertson*, 537 F.3d 859, 863 (8th Cir. 2008) (in supervised-release revocation proceeding, applying plain-error review to unpreserved objection that the sentencing court failed personally to address the defendant and invite him to speak in mitigation of sentence); *United States v. Pitre*, 504 F.3d 657, 661 (7th Cir. 2007) (same); *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (same); *United States v. Prouty*, 303 F.3d 1249, 1251 (11th Cir. 2002) (same, but in original sentencing proceeding); *United States v. Adams*, 252 F.3d 276, 278 (3d Cir. 2001) (same); *United States v. Cole*, 27 F.3d 996, 998 (4th Cir. 1994) (same). *But see United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008) (exercising the court's "'supervisory powers to oversee the administration of criminal justice'" to vacate sentence); *United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995) (applying de novo review to claim of complete denial of allocution, but finding no error); *United States v. Alba Pagan*, 33 F.3d 125, 130 (1st Cir. 1994) (no discussion of plain error and stating that "a failure to comply with the mandate of Rule 32(a)(1)(C) ordinarily requires vacation of the sentence imposed without a concomitant inquiry into prejudice"); *United States v. Carper*, 24 F.3d 1157, 1162 (9th Cir. 1994) (applying harmless error; no discussion of whether the error was preserved). Accordingly, we make clear now that a defendant who fails to object to the district court's procedures regarding the right of allocution must demonstrate plain error to warrant reversal on appeal.

substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Caraway*, 534 F.3d 1290, 1298 (10th Cir. 2008) (quotations omitted).

To give perspective to Mr. Rausch's argument that the district court erred in failing to personally ask him whether he would like to speak before imposition of sentence during the revocation proceeding, some background is necessary. The first version of Fed. R. Crim. P. 32, which applies to original sentencing hearings, stated that "[b]efore imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." Interpreting this version of Rule 32 in 1961, the Supreme Court held that the sentencing court must "issue[] . . . a personal invitation [to the defendant] to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305 (1961). As a result of the *Green* decision, Rule 32 was later amended to clarify that the sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

Rule 32, however, does not apply to revocation proceedings. Instead, those proceedings are governed by Rule 32.1, which was enacted in 1979 and amended to its current version in 2005. Rule 32.1, in contrast to the post-*Green* Rule 32, does not mention anything about the court addressing the defendant personally. Instead, Rule 32.1 closely tracks the language of the original Rule 32, stating that

a defendant is "entitled to an opportunity to make a statement and present any information in mitigation." *See* Fed. R. Crim. P. 32.1(b)(2)(e).  And here lies Mr. Rausch's argument: He contends that because Rule 32.1 is nearly identical to original Rule 32, and because the Supreme Court interpreted original Rule 32 as requiring a sentencing court to personally address the defendant, we should similarly interpret Rule 32.1.

Some circuits have done just that.  *See, e.g.*, *United States v. Pitre*, 504 F.3d 657, 661–62 (7th Cir. 2007); *United States v. Carruth*, 528 F.3d 845, 846–47 (11th Cir. 2008).  On the other hand, the Eighth Circuit has criticized such an approach, pointing out the significant textual difference between the Rule 32 interpreted in *Green* and the current version of Rule 32.1.  *See United States v. Robertson*, 537 F.3d 859, 862 & n.2 (8th Cir. 2008).  Thus, it is not readily apparent whether the district court in Mr. Rausch's case committed any error, or, if it did, whether such error is plain.  *See United States v. Whitney,* 229 F.3d 1296, 1309 (10th Cir. 2000) (explaining that an error is "plain" when it is clear or obvious under current and well-settled law); *Robertson*, 537 F.3d at 863 (holding that even assuming the court erred by not personally addressing the defendant at a supervised-release revocation hearing, "the error was not plain").

We need not decide that issue, however, because it is clear that even if the district court erred, the error does not seriously affect the fairness, integrity, or

public reputation of judicial proceedings.[2]  This was Mr. Rausch's third sentencing appearance before this district judge and his second for alleged violations of supervised release.  The court had warned him as far back as the preliminary scheduling hearing regarding the first release violations that additional violations would result in prison time.  Moreover, the court specifically told Mr. Rausch that it would impose the two-year statutory maximum upon further violations as far back as the first revocation hearing when it also personally invited Mr. Rausch to speak in mitigation of sentence.  At both hearings, Mr. Rausch expressly acknowledged the court's conditions, stating "yes, sir" after the court's warnings.  Accordingly, when Mr. Rausch again violated the terms of his supervised release, the district court made good on its agreement with him and imposed a two-year prison sentence.

On these particular facts, we are satisfied that any error by the district court in failing to personally invite Mr. Rausch to speak prior to imposing his sentence does not seriously affect the fairness, integrity, or public reputation of the revocation proceeding.  *See Hill v. United States*, 368 U.S. 424, 428 (1962) (in the habeas context, stating that the denial of the right to allocution "is not a

---

[2]We do not discuss the third prong of plain-error review here because our cases appear to presume prejudice for allocution errors.  *See Landeros-Lopez*, 615 F.3d at 1264 n.4; *United States v. Jarvi*, 537 F.3d 1256, 1261 (10th Cir. 2008).  We note, however, that establishing prejudice does not necessarily mean that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Indeed, the third and fourth prongs of plain-error review are "independent inquiries."  *United States v. Portillo-Vega*, 478 F.3d 1194, 1202 (10th Cir. 2007) (quotations omitted).

fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure."). Indeed, every court to have encountered similar circumstances has reached the same conclusion. *See Pitre*, 504 F.3d at 663 (error did not seriously affect the fairness of the proceeding when the court had, in a prior revocation proceeding, warned the defendant that one more supervised-release violation would automatically entail an above-Guidelines term of imprisonment, and the defendant had agreed to that "bargain"); *Reyna*, 358 F.3d at 352–53 (error did not seriously affect the fairness of the proceeding when the court had, in a prior revocation proceeding, warned the defendant that another supervised-release violation would result in an automatic revocation of his supervised release and an immediate sentence of twelve months in prison, the defendant had the opportunity to allocate at the prior revocation proceeding, and the defendant had agreed to that "original bargain").[3]

We also note that our decision is supported by Mr. Rausch's failure to set forth what he would have said to the district court prior to sentencing that might have mitigated his sentence. *See United States v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006) (defendant failed to satisfy the fourth prong of plain-error review regarding the district court's failure to permit him to allocute at supervised release revocation proceeding because he did not furnish information about what

---

[3]In this respect, we find our decision in *Landeros-Lopez* distinguishable.

he would have allocated to). We therefore decline to exercise our discretion to correct any error, and we need not address Mr. Rausch's argument that he should be sentenced before a different judge on remand.

B.     Substantive Reasonableness

We review all sentences, including those imposed for violations of supervised release, for reasonableness. *See United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 & n. 2 (10th Cir. 2005). Substantive reasonableness involves the length of the sentence imposed and is reviewed under an abuse-of-discretion standard. *See United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010). Mr. Rausch argues that his two-year sentence is substantively unreasonable because his supervised-release violation was the least serious type of violation, the violation was not intentional, he has no prior criminal record, and he is in his fifties and gravely ill. *See* 18 U.S.C. § 3553(a) (setting forth the factors used to determine a particular sentence).

The district court did not abuse its discretion in selecting a two-year sentence. Although above the 3–9 month sentence recommended by the Guidelines, the district court had repeatedly exercised leniency with Mr. Rausch, and Mr. Rausch repeatedly disregarded it. In addition, the court recognized the points raised by Mr. Rausch—either at his original sentencing, his first hearing on the government's petition alleging supervised-release violations, or at the final sentencing hearing—but determined that despite those circumstances, a higher

- 11 -

sentence was warranted because of his refusal to comply with the court's orders regarding treatment and the danger to society that his refusal created. On the facts of this case, the two-year sentence is reasonable.

C.      Lifetime of Supervised Release

Finally, Mr. Rausch argues that the district court erred in imposing a lifetime of supervised release to follow his two-year term of imprisonment. He contends that the maximum term of supervised release the court was authorized to impose was life less two years. *See* 18 U.S.C. § 3583(h) ("The length of . . . a term of supervised release [following a term of imprisonment] shall not exceed the term of supervised release authorized by statute . . ., *less any term of imprisonment that was imposed upon revocation of supervised release*.") (emphasis added). Mr. Rausch concedes, however, that this issue is reviewed for plain error. Even assuming the district court plainly erred in this respect, Mr. Rausch has not explained, nor can we contemplate, how he was prejudiced by such an error or how it seriously affects the fairness, integrity, or public reputation of the sentencing proceeding. Because it is impossible to predict the precise length of any individual's life, a sentence of "life less two years" has only conceptual—not practical—meaning. Accordingly, we do not notice the error.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Rausch's sentence.