**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JULIO CESAR MENCIA-HERNANDEZ,
a/k/a Luis Alberto Mesa-Hernandez, a/k/a
Wilson Hernandez-Contreras, a/k/a Elgar
Hernandez-Mencia, a/k/a Eric Hernandez
Contreras, a/k/a Luis A. Martinez-
Escalante, a/k/a Luis Alberto Martinez-
Escalante, a/k/a Julio Mencia-Hernandez,
a/k/a Naum Contreras, a/k/a Novis Josiel
Hernandez-Contreras, a/k/a Erik Contera,
a/k/a Eric Contreras,

    Defendant - Appellant.

14-4000
(D.C. No. 2:13-CR-548-RJS-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY, BALDOCK,** and **EBEL,** Circuit Judges.[**]
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1. The case therefore is ordered submitted without oral argument.

I.

In 2007, Defendant Julio Mencia-Hernandez pled guilty in the Western District of Texas to illegal reentry into the United States after deportation. The court there sentenced Defendant to 51 months in prison followed by a term of supervised release. Later, while on supervised release for this offense, Defendant was found in Utah. He eventually pled guilty in the District of Utah to a new charge of illegal reentry, and also admitted violating the terms of his supervised release by this new illegal reentry.[1]

The district court accepted Defendant's guilty pleas and sentenced him in both the illegal reentry and the supervised release violation cases at a single consolidated hearing. The court first accepted Defendant's guilty plea as to the illegal reentry charge. When the court turned to sentencing in that case, defense counsel repeatedly stressed the difficulty of addressing the sentences for the two crimes separately. The following colloquy ensued:

Court: I'll hear anything more you'd like to say before I impose a sentence, but I'm inclined to impose a sentence at the high end of the Guideline range on this [illegal reentry] case.

Defense: Knowing—It's a little bit tricky to respond to some of the specifics without knowing what's waiting around the corner, although—

Court: Let me tell you what I'm thinking about that—

Defense: Thank you.

Court: —if that's helpful. Mr. Hernandez served nearly three full years on his 51 month sentence in Texas, and especially if I

---

[1] Rather than return Defendant to the Western District of Texas, federal authorities there transferred jurisdiction over his supervised release to Utah.

> impose a sentence at the high end of the range [for illegal reentry], I have in mind that an appropriate sentence in [the supervised release violation] case would be at the low end, or possibly below. I'm not sure about that yet, but I'm thinking a low end sentence on the supervised release violation would be adequate in light of the substantial sentence he already served on that term.

Defense: So if you were to do high end on this, which is 27, plus the low end of that, which is 21, we'd be looking at a total of 48 months?

Court: That's exactly right.

After this, the parties argued over what sentence Defendant should receive for his illegal reentry offense. The court then spoke directly to Defendant and gave him the opportunity to allocute. Defendant responded simply, "Well, my desire is to be with my mother who is very poor in Honduras. No, just that." The court then imposed a 27-month sentence for illegal reentry, noting that "of course, . . . there will be another term that will run consecutive to this." Next, the court turned to Defendant's supervised release violation. In addressing the sentence for this violation, the government rested on what was said as to the illegal reentry and defense counsel reiterated its arguments for leniency. The court then imposed a below-guideline consecutive sentence of 13 months for the supervised release violation—without asking Defendant if he wanted to allocute again. Defendant never objected to this procedure. Yet now he appeals, arguing the district court committed plain error by not asking if he wanted to allocute separately as to his supervised release revocation.

Because Defendant did not object to the purported violation of his allocution rights below, we review his claim for plain error. United States v. Rausch, 638 F.3d 1296, 1299

(10th Cir. 2011).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects [Defendant's] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. at 1299–1300 (quoting United States v. Caraway, 534 F.3d 1290, 1298 (10th Cir. 2008)).  For an error to be plain, "the error must be clear or obvious under current, well-settled law.  In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue."  United States v. Story, 635 F.3d 1241, 1248 (10th Cir. 2011) (internal citations and quotation mark omitted).

Defendant argues that Fed. R. Crim. P. 32.1 and the accompanying advisory committee's notes clearly and obviously require that he be given an opportunity to allocute before being sentenced for his supervised release violation.  That may be so.  Indeed, Rule 32.1(b)(2)(E) provides that a defendant at a revocation hearing "is entitled to . . . an opportunity to make a statement and present any information in mitigation."  Moreover, the advisory committee's notes explain that, based on a 2005 amendment, "the court is required to give the defendant the opportunity to make a statement and present any mitigating information" at his revocation hearing.  Fed. R. Crim. P. 32.1 advisory committee's notes.

But just because Defendant is "entitled to . . . an opportunity" to allocute under Rule 32.1 does not mean the court committed clear and obvious error by not *sua sponte* reminding Defendant of that opportunity.  Rather, our cases hold the law is at most "unclear" as to "whether a district court's failure at a revocation hearing to address a defendant personally regarding an opportunity to allocute before sentencing is an error

-4-

under Rule 32.1." United States v. Nanez, 419 F. App'x 880, 883 (10th Cir. 2011) (citing Rausch, 638 F.3d at 1299–1301). The differences between Rule 32 (which applies to original sentencing hearings) and Rule 32.1 (which applies to supervised release revocations) illustrate why. Rule 32 dictates that "*the court must . . . address the defendant* personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii) (emphasis added). "Rule 32.1, in contrast . . . does not mention anything about the court addressing the defendant personally." Rausch, 638 F.3d at 1300; see also Nanez, 419 F. App'x at 882 ("Rule 32.1 does not specify if it is the court's responsibility to offer the opportunity to allocute or the defendant's responsibility to request it.").

Thus, because Defendant never requested an opportunity to give a second allocution at his hearing, to address his supervised release revocation in particular, any error the court may have committed by not *sua sponte* offering him the opportunity to do so "was certainly not plain" under either Rule 32.1, the advisory committee's notes, or our precedent. Nanez, 419 F. App'x at 883. But see, e.g., United States v. Daniels, 760 F.3d 920, 925 (9th Cir. 2014) (holding on plain error review that "Rule 32.1 . . . makes clear that, despite the linguistic differences between Rules 32 and 32.1, a court engaging in post-revocation sentencing must personally address a supervised releasee to ask if he wants to speak before sentencing").

Regardless, even assuming Defendant could show (1) error, (2) that was plain, and (3) that affected his substantial rights, we are satisfied that here, as in Rausch, any such error did "not seriously affect the fairness, integrity, or public reputation of the revocation

proceeding."[2] Rausch, 638 F.3d at 1301. Most significantly, this is not a case where the defendant was never given an opportunity to allocute before being sentenced. *Au contraire*, the court here, in a single consolidated hearing, *after explaining the sentences it was inclined to impose as to each offense*, personally addressed Defendant and offered him the opportunity to allocute. Thus, the record belies Defendant's attempt to construe this case as one where "the sentencing judge gave him no opportunity to address the court." Def's Br. at 8. Moreover, as in Rausch, Defendant fails to set forth what more he would have said to the district court had the court asked him to allocute a second time at the same hearing. Indeed, Defendant's response when initially offered the opportunity to allocute ("Well, my desire is to be with my mother who is very poor in Honduras. *No, just that.*") indicates he had nothing more to say. Therefore, even assuming Defendant could meet the first three prongs of plain error, we see no reason to exercise our discretion to correct any such error here.

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge

---

[2] "We do not discuss the third prong of plain-error review here because our cases appear to presume" that allocution errors would satisfy that prong. Rausch, 638 F.3d at 1301 n.2.