LUCERO, Circuit Judge,
joined by KELLY, BRISCOE, MATHESON, BACHARACH, McHUGH, and MORITZ, Circuit Judges.
We granted en banc review in this case because it involves a clear failure of the trial court to ask the defendant if he had anything to say on his behalf before imposing sentence — a failure to personally address the defendant and offer an opportunity to allocute. Because our jurisprudence has been somewhat contradictory, we also chose to grant en banc rehearing in order to refine the manner in which we conduct plain-error review following such a denial. For the reasons we state hereafter, the denial of allocution in the instant case satisfies the third prong of United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), and also requires a conclusion that the fourth prong of Plano was met by the defendant. This necessitates reversal of our previous panel opinion.
Pf course, the best practice is for the district court in its trial manuals and other memory prompts to always offer defendants the opportunity to allocute on their behalf. Federal Rule of Criminal Procedure 32 requires no less. Cases of this type arise only when the court and counsel forget this obvious step.
In prior cases, we have stated that a complete denial of allocution at a defendant’s initial sentencing hearing is per se or presumptively prejudicial. We now clarify that in a rare number of cases, such errors may not result in prejudice. In particular, defendants who receive the minimum permissible sentence will be unable to demonstrate that an allocution error affected their substantial rights. Further, we conclude that a formal presumption is unwarranted. Rather than shifting the burden of proof at the third prong of the plain-error test from the defendant to the government, we think it more accurate to say that in ordinary cases, defendants meet this burden simply by showing that they were denied the right to meaningfully address the court.
We adopt a similar approach with respect to the requirement that a defendant demonstrate a forfeited error seriously affected the fairness, integrity, or public reputation of judicial proceedings. That is, absent some extraordinary circumstance, *1134 defendants satisfy this burden if a complete denial of allocution occurs at their initial sentencing hearing. This rule applies regardless of whether the defendant has proffered a proposed allocution statement on appeal.
Applying these principles to the case at bar, we conclude that Miguel Bustamante-Conchas has established plain error. Accordingly, we vacate his sentence and remand for resentencing.
I
Bustamante-Conchas was charged with conspiracy to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, possession with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, and possession of a firearm during and in relation to a drug-trafficking crime. The district court dismissed the gun charge at the close of the government’s case. A jury found Bustamante-Conchas guilty of both drug charges.
A pre-sentence investigation report (“PSR”) calculated a total offense level of 40 and a criminal history category of I, resulting in a Guidelines range of 292 to 365 months. Bustamante-Conchas objected to the PSR’s drug quantity calculations, its inclusion of enhancements for possessing a firearm and maintaining a place for distributing drugs, its allegations regarding the conspiracy’s structure, and other factual statements. He also moved for a downward variance, based largely on his difficult upbringing. The motion detailed an impoverished childhood in which Busta-mante-Conchas was sent to live with his grandparents, suffered abuse from uncles in his household, and struggled with alcohol addiction. He also submitted letters from family members and others attesting to his good character. The government urged a within-Guidelines sentence of 292 months, arguing that Bustamante-Con-chas’ childhood circumstances were not so severe as to warrant a variance. It also submitted documents to contest Busta-mante-Conchas’ claims of good character.
The district court held a sentencing hearing on January 18, 2015, at which it primarily considered drug quantity. The government summarized evidence from trial and presented supplemental evidence regarding drug quantities found at four separate locations. After considering lengthy argument from counsel, the district court accepted the government’s contention that quantities at each residence were reasonably foreseeable to Busta-mante-Conchas. The parties also disputed whether Bustamante-Conchas should be subject to the sentence enhancements recommended in the PSR. The district court concluded both enhancements were proper.
After adopting the PSR’s offense-level calculations, the district court turned to Bustamante-Conchas’ motion for a downward variance. Defense counsel requested a sentence of 120 months, pointing to potential sentencing disparities between Bus-tamante-Conchas and his co-conspirators, and arguing that defendants should not be punished for exercising their right to proceed to trial. Defense counsel also briefly noted the points raised in her motion: that Bustamante-Conchas had been abused and neglected as a child, and had struggled with alcohol addiction. The government argued for a sentence of 292 months, citing the devastating consequences of heroin addiction, the need for deterrence, and Bus-tamante-Conchas’ key role in the conspiracy. The district court questioned whether a within-Guidelines sentence would be necessary if Bustamante-Conchas was barred from returning to the country.
*1135 Toward the end of the nearly four-hour hearing, the district court stated that it intended to impose a sentence of 240 months. In providing the reasons for its decision, the court noted Bustamante-Con-chas’ personal history and alcohol issues. The court further stated its concern with avoiding unwarranted sentencing disparities. It requested additional comment from defense counsel, who argued that the sentence would be disparate as compared to similar offenders. After formally announcing a sentence of 240 months, the court asked if there was any reason that sentence should not be imposed. Neither party objected, and the sentence was imposed. The court did not personally address Bus-tamante-Conchas prior to imposing sentence or otherwise offer him an opportunity to allocute.
Bustamante-Conchas filed a timely appeal. A divided panel of this court affirmed his sentence. United States v. Bustamante-Conchas, 832 F.3d 1179 (10th Cir. 2016). Regarding Bustamante-Conchas’ claim that the district court plainly erred by denying him the right to allocute, the panel majority held that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. at 1186. It noted that the “district court heard arguments regarding Bustamante-Conchas’s defenses, and his request for a low-end sentence”; the “court invited the parties to comment on the sentence multiple times”; “the district court imposed a sentence well-below Bustamante-Con-chas’s advisory guidelines range”; and “Bustamante-Conchas does not direct us to any additional information he would have provided to the district court had he been given the opportunity to allocute.” Id. We granted rehearing en banc, limited to the allocution issue, and vacated the panel opinion. United States v. Bustamante-Conchas, 838 F.3d 1038, 1039 (10th Cir. 2016).
II
A
Under Rule 32, a district court must “address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence.” Fed. R. Crim. P. 32(i)(4)(A)(ii). This Rule codifies the right of allocution, which has existed at common law for centuries. See Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (plurality opinion). The common law right to allocute served a distinctly different purpose than Rule 32: Because criminal defendants were historically barred from testifying on their own behalf, allocution provided the sole opportunity for defendants to plead certain legal defenses. See United States v. Ward, 732 F.3d 175, 181 (3d Cir. 2013); see also Boardman v. Estelle, 957 F.2d 1523, 1533 (9th Cir. 1992) (Hall, J., dissenting). But developments in criminal procedure have not diminished “the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation.” Green, 365 U.S. at 304, 81 S.Ct. 653.[1]
Rule 32 provides a defendant with two rights: “to make a statement in his own behalf, and to present any information in mitigation of punishment.” Green, 365 U.S. at 304, 81 S.Ct. 653 (quotations omitted). Because thfe former entitlement is *1136 necessarily, personal, a district court cannot discharge its duties under Rule 32 by permitting counsel to offer argument in mitigation. Id.; see also United States v. Myers, 150 F.3d 459, 461 (5th Cir. 1998) (“Rule 32 envisions a personal colloquy between the sentencing judge and the defendant.” (emphasis omitted)). As the Court in Green explained in an oft-quoted passage, “[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.” 365 U.S. at 304, 81 S.Ct. 653.
Granting defendants an opportunity to personally address the court advances several ends. First, it serves an informational function by allowing defendants “to present mitigating circumstances.” Ward, 732 F.3d at 181. Our court has previously recognized that allocution provides an unusually “broad right to present any information to mitigate the sentence.” United States v. Jarvi, 537 F.3d 1256, 1262 (10th Cir. 2008) (quotation omitted). We have thus held that the right of allocution is denied when a district court attempts to unduly limit the scope of a defendant’s allocution statement. Id.; see also United States v. Sarno, 73 F.3d 1470, 1503-04 (9th Cir. 1995) (right to allocute denied if defendant is permitted to argue only for a within-Guidelines sentence); United States v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994) (“[T]he court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.”).[2]
Second, allocution permits “the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence.” Ward, 732 F.3d at 181. It “is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances.” De Alba Pagan, 33 F.3d at 129; see also United States v. Barnes, 948 F.2d 325, 329 (7th Cir. 1991) (“The right to allocution is the right to have your request for mercy factored into the sentencing decision.”). Recognizing the possibility of mercy “reinforces the individuality of both the defendant and the sen-tencer” and reaffirms that a sentencing judge must “exercise discretion in a wise and humane way.” Kimberly A. Thomas, Beyond Mitigation: Towards a Theory of Allocution, 75 Fordham L. Rev. 2641, 2661 (2007).
Third, requiring a sentencing judge to personally engage with a defendant enhances “the appearance of fairness in the criminal justice system.” Ward, 732 F.3d at 181. “In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice.” Barnes, 948 F.2d at 331. Allocution thus “has value in terms of maximizing the perceived equity of the process.” Id. at 328 (quoting 3 ABA Standards for Criminal Justice 18-459 (2d ed. 1980)). Accordingly, “even in situations where a defendant’s comments stand little chance of influencing the sentencing judge, the right retains a symbolic significance.” United States v. Quintana, 300 F.3d 1227, 1231 (11th Cir. 2002). Alocution can also supply “a forum in which defendants may challenge societal injustice, and may provide answers to victims’ questions regard *1137 ing the crime.” United States v. Landeros-Lopez, 615 F.3d 1260, 1267 n.7 (10th Cir. 2010) (citing Mary Margaret Giannini, Equal Rights for Equal Rites?: Victim Allocution, Defendant Allocution, and the Crime Victims’ Rights Act, 26 Yale L. & Pol’y Rev. 431, 478-81 (2008)).
B
Although the right to allocute is important, most circuits, including ours, have held that unpreserved allocution errors are subject to plain-error review under Fed. R. Crim. P. 52(b). See United States v. Rausch, 638 F.3d 1296, 1299 n.1 (10th Cir. 2011); United States v. Luepke, 495 F.3d 443, 446-48 (7th Cir. 2007); United States v. Reyna, 358 F.3d 344, 350-51 (5th Cir. 2004) (en banc); United States v. Prouty, 303 F.3d 1249, 1251-52 (11th Cir. 2002); United States v. Adams, 252 F.3d 276, 278-79, 284-85 (3d Cir. 2001); United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994). But see United States v. Wolfe, 71 F.3d 611, 614 (6th Cir. 1995) (applying de novo review to unpreserved allocution error); De Alba Pagan, 33 F.3d at 129 n.4 (stating that because “it is the court’s obligation to invite the defendant’s remarks ..., a defendant ordinarily will not be held to have waived the right of allocution merely because he did not seek to address the court”).[3] We adhere to our prior decisions on this score, mindful of the Supreme Court’s admonition that creating exceptions to Rule 52(b) can “skew the Rule’s careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.” Johnson v. United States, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quotation omitted). To demonstrate plain error, a litigant must show: “(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Mike, 632 F.3d 686, 691-92 (10th Cir. 2011) (quotation omitted).
We do not need to tarry on the first two prongs of the plain-error test. The district court failed to “address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence.” Fed. R. Crim. P. 32(i)(4)(A)(ii). Although the district court asked generally for comment before formally imposing sentence, its failure to personally address Bustamante-Conchas was “contrary to well-settled law,” United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir. 2003), from both this circuit and the Supreme Court, see Hill, 368 U.S. at 426, 82 S.Ct. 468 (“Rule 32(a) requires a district judge before imposing [a] sentence to afford every convicted defendant an opportunity personally to speak [on] his own behalf.”); Landeros-Lopez, *1138 615 F.3d at 1264 (same). A complete denial of allocution thus satisfies the first and second prongs of plain-error review. Our analysis of the third and fourth prongs warrants greater discussion.
C
To satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was “prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.” United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir. 2008) (quotation omitted). “The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different.” United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Instead, “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” United States v. Hasan, 526 F.3d 653, 665 (10th Cir. 2008) (quotation omitted).
The Supreme Court has held that “[n]or-mally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy” the third prong of plain-error review. Olano, 507 U.S. at 735, 113 S.Ct. 1770. It left open the possibility that some errors “should be presumed prejudicial if the defendant cannot make a specific showing of prejudice.” Id. And in our prior cases, we have described allocution errors as “per se prejudicial.” Jarvi, 537 F.3d at 1262; Landeros-Lopez, 615 F.3d at 1264 n.4. We have alternatively described our review as “presum[ing] prejudice for allocution errors.” Rausch, 638 F.3d at 1301 n.2; United States v. Mendoza-Lopez, 669 F.3d 1148, 1153 (10th Cir. 2012) (quotation omitted).
Our descriptions track those of the majority of our sibling circuits to have considered the issue. See United States v. Perez, 661 F.3d 568, 586 (11th Cir. 2011) (“[W]e presume that the denial of a defendant’s right to allocute was prejudicial whenever the possibility of a lower sentence exists.”); United States v. Haygood, 549 F.3d 1049, 1055 (6th Cir. 2008) (“[T]his court has noted that prejudice is effectively presumed' when allocution is overlooked....”); Luepke, 495 F.3d at 451 (“[W]hen there has been a violation of the right to allo-cute, a reviewing court should presume prejudice when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing sentence.”); United States v. Gunning, 401 F.3d 1145, 1149 (9th Cir. 2005) (“[W]hen a district court could have lowered a defendant’s sentence, we have presumed prejudice and remanded, even if we doubted that the district court would have done so.” (emphases omitted)); Reyna, 358 F.3d at 352 (“[W]e presume that [defendant] was prejudiced by the district court’s [allocution] error....”); Adams, 252 F.3d at 287 (“[W]e conclude that we should presume prejudice when a defendant shows a violation of the right and the opportunity for such a violation to have played a role in the district court’s sentencing decision.” (emphasis omitted)); see also Cole, 27 F.3d at 999 (rejecting per se rule, but holding that if there is any possibility of a lower sentence, “we are unable to say that [defendant] was not prejudiced by the denial of his right to allocute”).[4]
*1139 As other circuits have explained, defendants who have been denied allocution face a practical difficulty under the third prong because appellate courts “cannot speculate as to the persuasive ability of anything [a defendant] may have said in his statement to the court.” United States v. O’Hallaren, 505 F.3d 633, 636 (7th Cir. 2007); see also Luepke, 495 F.3d at 451 (presumption “avoids our speculation about what the defendant might have said had the right been properly afforded him”); Reyna, 358 F.3d at 352 (same).
We agree, as discussed in greater detail in Section II.D, infra, that appellate courts should not speculate about the persuasive force of a hypothetical allocution. And we further agree that in the vast majority of instances in which a defendant could have received a lesser sentence, an allocution error is prejudicial. However, we think that both per se prejudice or a presumption of prejudice are technically inaccurate descriptors. Rather than adopting a per se rule or formally shifting the burden of proof from the defendant to the government, a more precise description of our jurisprudence is that a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance as described herein.
The Supreme Court adopted a similar framework for plain-error review in cases in which a district court improperly calculated the Guidelines range but nonetheless sentenced a defendant to a term within the correct range. See Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1345, 194 L.Ed.2d 444 (2016). It held that in “the ordinary case,” an incorrectly calculated Guidelines range standing alone suffices to show “a reasonable probability of a different outcome.” Id. at 1346-47. “Absent unusual circumstances,” the Court held, a defendant is not “required to show more.” Id. at 1347. Rejecting the government’s argument that such a rule essentially' flipped the burden of proof by requiring “the Government to prove the harmlessness of every Guidelines error raised on appeal regardless of whether it was preserved,” the Court explained that it did not alter the burden, but merely held “that a defendant can .rely on the application of an incorrect Guidelines range to show an effect on his substantial rights.” Id. at 1348.
So too here. Just as the Guidelines are ordinarily expected to have some impact on a sentence, id. at 1347, there is at least a reasonable probability that allo-cution matters in the usual case. This is so even if defendants do not identify the particular statements they wished to make. See § II.D, infra. In a survey of federal district judges, more than 80% of respondents stated that allocution was at least “somewhat important” in arriving at a final sentence. Mark W. Bennett, Last Words: A Survey and Analysis of Federal Judges’ Views on Allocution in Sentencing, 65 Ala. L. Rev. 735, 757-58 (2014).[5] And the Na *1140 tional Association of Criminal Defense Lawyers, acting as amicus curiae, has submitted a number of cases in which a defendant who was denied the right to allocute received a lesser sentence after allocution on remand. (Br. of Amicus Curiae Nat’l Ass’n of Criminal Defense Lawyers at 3-4.) Denying a defendant the right to allo-cute is “tantamount to denying him his most persuasive and eloquent advocate.” Adams, 252 F.3d at 288. Without some exceptionally good reason to doubt that allocution would have mattered, the complete denial of a defendant’s right to' allo-cute raises a reasonable probability of a lesser sentence.[6]
Of course, there are some instances in which good reason for doubt exists. Several courts have held that an allocution error is not prejudicial if a defendant receives the lowest possible sentence. See United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir. 1993); United States v. Mejia, 953 F.2d 461, 468 (9th Cir. 1991). Under such circumstances, a remand for resentencing would be a “fruitless exercise.” Lewis, 10 F.3d at 1092. We adopt this reasoning: If a sentence could not have been lower, a defendant cannot show prejudice.
A defendant sentenced to the statutory minimum is the clearest example of a sentence that cannot be lowered (absent a motion by the government based on substantial assistance). See United States v. A.B., 529 F.3d 1275, 1280 (10th Cir. 2008) (“As a matter of law, the district court [is] not authorized ... to consider factors other than substantial assistance in sentencing below the statutory minimum.”). The same rule would apply to a defendant sentenced to the minimum agreed term under a Fed. R. Crim. P. 11(c)(1)(C) plea agreement if the district court previously accepted the plea. See Fed. R. Crim. P. 11(c)(1)(C) (noting that a plea agreement for a specific sentence or sentencing range under that subsection “binds the court once the court accepts the plea agreement”). But see United States v. Paladino, 769 F.3d 197, 203 (3d Cir. 2014) (rejecting argument that denial of allocution could not have been prejudicial following an oral plea agreement that tracked Rule 11(c)(1)(C) because “a district court still retains discretion to accept or reject such an agreement”). Both Lewis and Mejia concerned sentences at the bottom of a Guidelines range at a time when the Guidelines were mandatory. See Lewis, 10 F.3d at 1092; Mejia, 953 F.2d at 468. But *1141 because district courts may now vary below an advisory Guidelines range, see United States v. Smart, 518 F.3d 800, 809-10 (10th Cir. 2008), a sentence at the bottom of a Guidelines range does not qualify as an exceptional circumstance justifying a deviation from the general rule.[7]
In this case, Bustamante-Conchas received a sentence of 240 months, substantially below his Guidelines range. Yet the district court retained discretion to vary further. See 21 U.S.C. § 841(b)(1)(A) (setting ten-year mandatory minimum). And although Bustamante-Conchas’ counsel argued for a lesser sentence, such argument is no substitute for a personal statement by the defendant. See Green, 365 U.S. at 304, 81 S.Ct. 653 (“The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.”). Nor do we consider the absence of a proffered allocution statement in assessing prejudice. See § II.D, infra. Bustamante-Conchas presents an ordinary denial of the right to allocute. As such, he has carried his burden of demonstrating prejudice.
D
If a defendant satisfies the first three prongs of the plain-error test, we may correct the error “only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.” United States v. Gonzalez-Huerta, 403 F.3d 727, 736 (10th Cir. 2005). The third and fourth prongs of plain-error review are “independent inquiries.” United States v. Portillo-Vega, 478 F.3d 1194, 1202 (10th Cir. 2007) (quotation omitted). “The fourth prong is meant to be applied on a case-specific and fact-intensive basis. We have emphasized that a per se approach to plain-error review is flawed.” Puckett v. United States, 556 U.S. 129, 142, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (quotation omitted). In considering the fourth prong, ‘•‘the seriousness of the error must be examined in the context of the case as a whole.” Mendoza-Lopez, 669 F.3d at 1153.
Some courts appear to have adopted a rule that allocution errors necessarily qualify under the fourth prong, at least for cases that satisfy the first three prongs. See Prouty, 303 F.3d at 1253 (denial of allocution “is not the sort of isolated or abstract error that does not impact the *1142 fairness, integrity or public reputation of judicial proceedings” (quotations omitted)); Adams, 252 F.3d at 288 (same); Cole, 27 F.3d at 999 (“When a defendant was unable to address the court before being sentenced and the possibility remains that an exercise of the right of allocution could have led to a sentence less than that received, we are of the firm opinion that fairness and integrity of the court proceedings would be brought into serious disrepute were we to allow the sentence to stand.”).
As with the third prong, however, we decline to adopt a per se rule or a formal presumption. Instead, we conclude that absent some unusual circumstance as hereafter described, a complete denial of allocution at a defendant’s sentencing hearing will satisfy the fourth prong of the plain-error test. See United States v. Pitre, 504 F.3d 657, 663 (7th Cir. 2007) (although “[r]emand ordinarily is required when a defendant has been denied the right to allocution[,] ... the general rule does not foreclose the possibility that the facts of a particular case may compel a conclusion that any violation of the defendant’s right to allocution did not affect seriously the fairness of the judicial proceedings”); Luepke, 495 F.3d at 451 (“We believe that, in the vast majority of cases, the denial of the right to allocution is the kind of error that undermines the fairness of the judicial process.”); Reyna, 358 F.3d at 352 (“In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant’s right to allocution does not violate the last Piano prong.”).
A district court’s failure to permit allocution undermines “the legitimacy of the sentencing process.” Adams, 252 F.3d at 288. By addressing a defendant personally before imposing sentence, district courts enhance “the appearance of fairness in the criminal justice system.” Ward, 732 F.3d at 181; see also Barnes, 948 F.2d at 328, 331 (stating that allocution helps “to avoid the appearance of dispensing assembly-line justice” and “has value in terms of maximizing the perceived equity of the process” (quotation omitted)). This legitimacy-enhancing function is based in part on the reasonable probability of prejudice. See United States v. Brown, 316 F.3d 1151, 1161 (10th Cir. 2003) (“[In] considering whether to correct unobjected-to sentencing errors ... the key concern has been whether correct application of the sentencing laws would likely significantly reduce the length of the sentence.”).
Even in instances in which a significantly lesser sentence is unlikely, a denial of allocution subverts other public values. In a survey of federal district judges, a large majority of respondents stated that allocution serves “other important purposes.” Bennett, 65 Ala. L. Rev. at 749. District judges noted that allocution provides an opportunity for the defendant to participate in the sentencing process; “benefits the victim, the victim’s family, and the defendant’s family”; provides judges and the public with a better understanding of the defendant; and helps the defendant to accept responsibility. Id. at 749-50; see also Landeros-Lopez, 615 F.3d at 1267 n.7 (noting that allocution “may provide answers to victims’ questions regarding the crime”). If a court imprisons á person without hearing the defendant’s voice, the public may question whether that defendant received the individualized assessment of personal characteristics and circumstances that Congress has mandated. See 18 U.S.C. § 3553(a).
Nevertheless, there are rare circumstances in which an allocution error does not satisfy the fourth prong. In some eases, a district court makes clear — following an initial opportunity to allocute — that *1143 it is certain to impose a specific sentence if a /defendant violates supervised release. For example, in Rausch, the defendant repeatedly violated the terms of his supervised release. 638 F.3d at 1298-99. At his first revocation hearing, the court invited the defendant to allocute and warned that it would impose a two-year prison term upon any further violations. Id. After the defendant again violated the terms of supervised release, the court sentenced him as promised without inviting further allo-cution. Id. at 1299. Other circuits have declined to remand under similar circumstances. See Pitre, 504 F.3d at 663; Reyna, 358 F.3d at 352-53.[8] We caution that this exception applies only on re-sentencing; a defendant would be entitled to relief even if a district court made clear that it intended to impose a specific sentence without allocution at an initial sentencing hearing. “Rule 32 denies any judge the discretion to reduce the hearing on sentence to a meaningless formality.” United States v. Long, 656 F.2d 1162, 1165 (5th Cir. 1981).
Similarly, remand may not be warranted if a defendant was not wholly denied the opportunity to allocute. That is, if the defendant was offered a meaningful opportunity to address the court and present mitigating circumstances, but the district court failed to fully comply with Rule 32. For example, in United States v. Frost, 684 F.3d 963 (10th Cir. 2012), the district court personally addressed the defendant to ask whether he had any statement to make prior to imposing sentence. Id. at 979. The defendant “spoke at length about his upbringing and family circumstances, as well as his perception of unfair treatment at trial and in his past proceedings.... ” Id at 980. He also requested a lesser sentence and stated he would satisfy probation and counseling requirements. Id. However, the defendant argued on appeal that the district court violated his right to allocute because, prior to inviting comment, the court stated it was inclined to accept the PSR’s recommended sentence. Id. at 979. We held that the fourth prong of the plain-error test was not satisfied because the court’s comment did not inhibit the defendant from “making a meaningful statement in an attempt to influence his sentence,” and he “had an opportunity to influence the ■ sentence imposed.” Id. at 980. If both of these conditions are satisfied, remand may be inappropriate.
The government argues that a defendant cannot satisfy the fourth prong of the plain-error standard without proffering a proposed allocution statement on appeal. In several prior cases, we noted that defendants’ failure to proffer statements undercut their claims of plain error. See Craig, 794 F.3d at 1239; Mendoza-Lopez, 669 F.3d at 1154; Frost, 684 F.3d at 980; Rausch, 638 F.3d at 1302. This line of cases appears to stem from the Fifth Circuit’s statement in United States v. Magwood, 445 F.3d 826 (5th Cir. 2006), that the defendant did “not furnish any information about what he would have allocuted to that might have mitigated his sentence.” Id. at 830. From this comment, the Fifth Circuit has developed a rule under which a defendant is required to proffer an allocution statement to the appellate court. See United States v. Palacios, 844 F.3d 527, 532-33 (5th Cir. 2016) (collecting cases).
*1144 We reject the proposition that a defendant must proffer an allocution statement to obtain relief, and expressly overrule our prior cases suggesting that such a proffer is relevant. We do so for several reasons. First, accepting a proffered allo-cution statement would violate the fundamental tenet that appellate courts “will not consider material outside the record before the district court.” United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000). Further, even if we were inclined to violate this principle, appellate courts are in a poor position to assess an allocution statement. The Fifth Circuit appears to weigh the persuasive value of a proffer. See Palacios, 844 F.3d at 533 (stating that defendant’s proffer “adds detail and description to these assertions [made by counsel at sentencing], presents additional mitigating evidence, and does all of this in his own voice”). But sincerity and credibility are difficult to discern from a cold record. See Wainwright v. Witt, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). To the extent the government contends that we should demand a proffer without assessing its persuasive value, we do not perceive any reason to impose such a formality.
Moreover, much of the value of an allo-cution statement lies in its ability to convey sincere remorse. “[I]t is not only the content of the defendant’s words that can influence a court, but also the way he says them.” Noel, 581 F.3d at 503. A district court should see “the teary eye and trembling hand, heart ] the quaking voice.” United States v. McIntosh, 198 F.3d 995, 1006 (7th Cir. 2000) (Rovner, J., dissenting in part). A written statement presented to an appellate court cannot fulfill this important sentencing function.[9]
Applying the foregoing principles to the case at bar, we conclude that the district court’s failure to permit Busta-mante-Conchas an opportunity to allocute seriously affected the fairness, integrity, and public reputation of judicial proceedings. Bustamante-Conchas was not given a meaningful opportunity to address the court. Cf. Frost, 684 F.3d at 979-80. And this was his initial sentencing hearing. Cf. Rausch, 638 F.3d at 1298-99. The panel majority noted that the district court heard argument from counsel and invited further comment (without personally addressing Bustamante-Conchas). See Bustamante-Conchas, 832 F.3d at 1186. But argument from counsel does not obviate the important public purpose served by allocution. See Barnes, 948 F.2d at 328. The panel majority also noted that Busta-mante-Conchas received a below-Guidelines sentence. Bustamante-Conchas, 832 F.3d at 1186. However, as explained in Section II.C, supra, we conclude there is a reasonable probability that the district court would have varied further had it heard allocution. In short, no extraordinary circumstances warrant a departure from our general rule that the complete denial of allocution seriously affects the fairness, integrity, or public reputation of judicial proceedings.
m
We VACATE Bustamante-Conchas’ sentence and REMAND to the district court for resentencing.

. Despite these deep roots, the denial of allo-cution is not a jurisdictional or constitutional error. Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); see also Harvey v. Shillinger, 76 F.3d 1528, 1534 (10th Cir. 1996). Nor does such a denial "inherently result! ] in a complete miscarriage of justice” or violate “the rudimentary demands of fair procedure.” Hill, 368 U.S. at 428, 82 S.Ct. 468. Accordingly, an allocution error does not provide grounds for habeas relief. Id.

. Although the right of allocution is broad, district courts retain discretion to limit its duration and bar "irrelevancies or repetitions.” Ashe v. North Carolina, 586 F.2d 334, 337 (4th Cir. 1978).

. It is unclear whether plain-error review applies to allocution errors in the Second Circuit, compare United States v. Axelrod, 48 F.3d 72, 72-73 (2d Cir. 1995) (per curiam) ("Resentencing is required if a district court fails to afford a defendant the opportunity to address the court prior to imposing the sentence.”), with United States v. Rosenbauer, 47 Fed.Appx. 606, 607 (2d Cir. 2002) (unpublished) (applying plain-error review); the Eighth Circuit, compare United States v. Robertson, 537 F.3d 859, 863 (8th Cir. 2008) (stating that an allocution error “was not plain”), with United States v. Walker, 896 F.2d 295, 301 (8th Cir. 1990) ("[Fjailure to comply with rule 32(a)’s requirement requires a remand for resentencing.”); and the Ninth Circuit, compare United States v. Daniels, 760 F.3d 920, 922-23 (9th Cir. 2014) (“as-sum[ing] without deciding that plain error review applies”), with United States v. Carper, 24 F.3d 1157, 1162 (9th Cir. 1994) ("We review the district court's failure to afford appellant his right of allocution for harmless error.”).

. Some courts are not clear as to the standard of review but have simply stated that an allo-cution error requires resentencing. See Walker, 896 F.2d at 301; De Alba Pagan, 33 F.3d at 130.

. Judge Hartz’s dissenting opinion suggests that information regarding the sentences of defendants who were offered a chance to allo-cute is of little relevance because we are dealing with a different cohort of defendants: those who failed to object when they' were denied the right of allocution. (Dissenting Op., Hartz, J., at 1148-49.) He contends that among the latter category of defendants, it is more likely that counsel strategically elected against allocution. (Id. at 1149.) But this argument ignores the fact that we are concerned only with defendants whose counsel failed to object and who raise the allocution issue on appeal. There would be no reason for counsel who has determined that allocution would be harmful to a client to seek remand for the sole purpose of permitting allocution. The common-sense conclusion to draw in plain error allocution appeals is that counsel *1140 simply overlooked the allocution issue at sentencing. As to this group of defendants — those who failed to object but wish to allocute — the cited data is highly probative.
Additionally, Judge Hartz notes that a defendant who is denied an opportunity to allo-cute might be able to raise the issue in a Fed. R. Crim. P. 35 motion, or seek habeas relief. (Id. at 1149-50, 1150 n.3.) Of course, the better practice in all plain error cases is for defense counsel to object. But Rule 52(b) permits review of forfeited errors, and we must decide these issues when they are presented on direct appeal regardless of other potential avenues for relief.

. Chief Judge Tymkovich's dissent indicates that a defendant cannot show prejudice without identifying some material information that was not presented by counsel. (Dissenting Op., Tymkovich, C.J., at 1146-47, 1147-48.) Although counsel’s arguments may satisfy some portion of the informational function of allocution, "it is not only the content of the defendant’s words that can influence a court, but also the way he says them.” United States v. Noel, 581 F.3d 490, 503 (7th Cir. 2009). Expressing genuine remorse and speaking with sincerity were the two most important aspects of allocution according to district judge respondents in the above-cited survey. Bennett, 65 Ala. L. Rev. at 752. Argument by counsel, whether at sentencing or in briefing to an appellate court, is no substitute for a defendant's opportunity to personally address the sentencing judge.

. The government has taken the position that prejudice should be presumed in considering allocution issues on plain-error review, and that Bustamante-Conchas has satisfied the third prong based on this presumption. We choose not to accept the government's position and proceed on our own analysis. If "an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.” U.S. Nat’l Bank v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quotation omitted). We possess the discretion to reject what is, in effect, “a stipulation on a question of law” by the government, id. at 448, 113 S.Ct. 2173, and address the issue directly for several reasons.
First, the question was squarely presented to this court: Bustamante-Conchas, the party with the burden of demonstrating plain error, argues that he has established prejudice because a lesser sentence was available. Second, because we granted en banc review in this case to address a recurring issue in our circuit, concerns of judicial economy counsel in favor of deciding the issue on the merits rather than relying on waiver principles. See Ohlander v. Larson, 114 F.3d 1531, 1538 (10th Cir. 1997) (interests of judicial economy should be considered in determining whether to decide an issue on the merits). Finally, the issue presented is purely a question of law. See generally Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004) (in deciding whether to address alternative theory, an issue of law is more properly considered than a question of fact).

. We are mindful that Fed. R. Crim. P. 32.1, which governs supervised release revocation hearings, differs in some respects from Rule 32. See United States v. Craig, 794 F.3d 1234, 1238-39 (10th Cir. 2015) (noting that our circuit has yet to decide whether Rule 32.1 requires the court to personally invite the defendant to speak). However, we consider the foregoing scenario as illustrative of the types of extraordinary circumstances under which an allocution error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

. Chief Judge Tymkovich's dissent agrees that a defendant should not be required to proffer a proposed allocution statement to establish plain error, but faults Bustamante-Conchas for failing to identify additional information he could have offered at sentencing. (Dissenting Op., Tymkovich, C.J., at 1147-48.) That begs the question. This dissenting opinion leaves a gap in its analysis as to how a defendant could make such a showing under its theory absent consideration of extra-record evidence or speculation.